## IN RE ESTATE OF MALCUS Q. LINDQUIST, DECEASED.

## ANNA C. LINDQUIST v. SECURITY LOAN & TRUST COMPANY.[1]

April 25, 1919.

No. 21,164.

**Will — wife's consent at time of execution given intelligently.**
The evidence is *held* to sustain a finding of the trial court that the widow of a testator who consented in writing to the will of her husband was fully advised as to the extent of her husband's property and of her rights under the law and in executing her consent acted with intelligent knowledge of the situation.

The Security Loan & Trust Company petitioned the probate court for Goodhue county for the allowance of the last will and testament of Malcus Q. Lindquist, deceased. Anna C. Lindquist, widow of decedent, filed objections to the allowance of the will. From an order of the probate court setting aside the consent of the widow, Anna C. Lindquist, to the will of decedent, and setting apart the homestead and personal property to said widow and decreeing that she should take her distributive share of the estate, the Security Loan & Trust Company appealed to the district court for that county. The appeal was tried before Converse, J., who made findings and held that Anna C. Lindquist had duly elected to accept the provisions of the will, in lieu of her rights in her husband's estate by virtue of the statutes of the state, and that her attempted renunciation and repudiation of such consent were null and void, and ordered that her petition to have the homestead and personal property set apart to her as the surviving spouse of decedent be denied. From an order denying her motion to set aside the judgment, contestant appealed. Affirmed.

[1]Reported in 172 N. W. 121.

*Arthur E. Arntson* and *F. M. Wilson,* for appellant.
*P. B. Green,* for respondent.

DIBELL, J.

Malcus Q. Lindquist died in Red Wing on March 25, 1917. He left a will. The appellant, Anna C. Lindquist, is his wife. She consented in writing to the will at the time of its execution. After Lindquist's death she filed in the probate court a rescission of her consent and an election to take under the statute.

Upon appeal from the probate court the district court found that Mrs. Lindquist was fully advised as to the extent of her husband's property and of her rights under the law and acted with intelligent knowledge of the situation when she consented to the will.

The sufficiency of the evidence to sustain this finding is the only question. The law as to a consent is stated in State v. Probate Court of Hennepin County, 129 Minn. 442, 152 N. W. 845, L.R.A. 1915E, 815, and cases cited. Counsel did not disagree upon the law. They disagree as to the propriety of the finding made by the district court.

Lindquist left a son 14 years old by a former marriage and a son three years old by the appellant. He had property valued at something in excess of $40,000. He had a three-story building in Red Wing, the upper story of which he occupied, and this building constituted the homestead. It was valued at $13,000. The estimated annual income from all his property was $2,400 or $2,500.

The will, after two minor bequests, devised all the testator's property to the Security Loan & Trust Company of Red Wing in trust. One-third of the net income of all the property was to be paid to the widow during her life. Each of the boys was to have a like one-third, but so long as they lived with their mother during minority she was to be paid for their care out of their portion of the income. Comfortable provision was always to be made for the widow, and to that end resort might be had to the corpus of the estate. Upon her death the property went to the two boys in equal shares, and upon the death of either without issue the other took his share.

It is fairly gathered from the will that the testator had first in mind that comfortable support should be assured his wife and that his two

boys should eventually share equally in the residue of the property after her death. It was within his power to favor the son by his first wife if he chose. If he made no will his son by the appellant might gain, for he would inherit from his mother. The testator intended that neither should be favored. The terms of the will, and the situation of the beneficiaries, are important only as they give light upon the appellant's consent to the will, and we have referred to them but briefly.

Mrs. Lindquist had a fair knowledge of her husband's property. He had a jewelry store and she worked in it. She knew something of his different properties and the income from them. She was consulted by her husband in the making of the will. After one conference two bequests, one of $1,000 and one of $500, to her husband's relatives, were reduced one-half. There is evidence that the will was read over to her and its meaning explained by counsel who prepared it. There is evidence that she was told that the estate would approach $50,000. There is evidence that she understood that the trust company would care for the property and that she expressed appreciation of being relieved of the management of it. It was understood some time before the making of the will that her husband would not live long, but there seems to have been no haste in its execution. After it was written, and shortly before it was executed, and after it was explained to the appellant by counsel, she was in conference with her husband for some little while with the will in her possession. She was apparently exercising her judgment. The homestead was an unusual one since it was a business block in which the law gave the widow a life estate, and the evidence is not entirely satisfactory as to definite information given her relative to her rights in it. But the general finding of the trial court finds sufficient support.

A careful consideration leads to the conclusion that the evidence sustains the finding. It seems that a finding either way would be sustained.

Affirmed.